**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Alexander Otis Matthews

    v.                                       Civil No. 15-cv-180-PB

R. Bilodeau, P. Deveney, W. Mullens,
and Esker Tatum, Warden, FCI-Berlin

**REPORT AND RECOMMENDATION**

Before the court is federal prison inmate Alexander Otis Matthews's complaint (doc. no. 1) and an addendum to that complaint (doc. no. 4).  The pleadings are before the court for preliminary review pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1).

Matthews's claims arise out of a "verbal altercation" between Matthews and another inmate at the Federal Correctional Institution, Berlin, New Hampshire ("FCI-Berlin"), and the ensuing prison disciplinary proceedings.  Corrections Officer ("C.O.") Bilodeau was the first officer to respond and ordered both inmates to lie down.  Matthews alleges that he complied.  Bilodeau described the circumstances differently.  Bilodeau wrote Matthews up for repeatedly refusing to comply with an order to lie down -- an accusation Matthews asserts is false.  A hearing was held on February 24, 2015.  Matthews was found guilty and as a result, lost his prison job, visiting privileges, and commissary access for thirty days.  Matthews's

appeal to the Warden was unavailing.  Matthews also asserts that

he also lost his top bunk as a result of the disciplinary

proceeding.

The claims for damages and injunctive relief asserted in

the pleadings (doc. nos. 1 and 4) are summarized below:

1.   FCI-Berlin C.O. Bilodeau violated Matthews's Fifth
Amendment rights by handcuffing Matthews, without reciting
Miranda warnings, resulting in Matthews making statements that
were used against him in subsequent disciplinary proceedings.

2.   Bilodeau violated Matthews's Fifth Amendment rights to
equal protection and due process, and failed to protect Matthews
from the risk of inmate violence, by handcuffing Matthews and
escorting him through unsecured grounds without issuing a
recall, in violation of Bureau of Prisons ("BOP") policy and
general practice.

3.   Defendants violated Matthews's Fifth Amendment rights to
procedural due process with respect to the February 24, 2015,
disciplinary hearing, in that Matthews:

    a.   did not receive adequate advance notice of the date
    and time of the disciplinary hearing;

    b.   was not allowed to have C.O. Dasilva at the hearing as
    Matthews's staff representative;

    c.   was denied the opportunity to call inmates as
    witnesses; and

    d.   was not provided a written response to each argument
    he asserted in his appeal of his conviction.

4.   Defendants violated Matthews's right to equal protection
and substantive due process with respect to the disciplinary
proceedings, in that:

    a.   C.O. Bilodeau's disciplinary charge was false;

    b.   Defendants held a hearing on that disciplinary charge,
    notwithstanding an FCI-Berlin supervisor's assurances to

Matthews that no disciplinary proceedings would ensue;

    c.   Defendants imposed sanctions upon Matthews that were
    more severe than those imposed upon other inmates; and

    d.   Warden Esker Tatum did not respond to each of
    Matthews's arguments.

5.   Defendants retaliated against Matthews for engaging in
conduct protected under the First Amendment when:

    a.   During the February 24, 2015, disciplinary hearing,
    hearing officer Deveney threatened to write up Matthews for
    a disciplinary offense, in retaliation for Matthews
    continued questioning of Deveney's decision not to allow
    Matthews to bring in other inmates as witnesses; and

    b.   Matthews's sanctions for the disciplinary offense
    included Matthews's loss of his prison law librarian job,
    which Matthews believes was retaliatory for Matthews having
    assisted other inmates in the law library and for having
    litigated his own civil rights cases.

6.   C.O. Bilodeau made a false statement relating to the
February 2015 disciplinary charge, in violation of federal
criminal law.

## Preliminary Review Standard

For the purposes of this court's preliminary review of

prisoner pleadings under 28 U.S.C. § 1915A and LR 4.3(d)(1), the

court construes the pleading liberally in determining whether a

pro se pleading states a claim.  See Erickson v. Pardus, 551

U.S. 89, 94 (2007).  Disregarding any legal conclusions, the

court considers whether the factual content in the pleading and

inferences reasonably drawn therefrom, taken as true, state a

claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-

03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## Discussion

### I.   Miranda Violation (Claim 1)

Matthews argues that his Fifth Amendment rights were violated when officers took his statements after he was handcuffed without issuing him a Miranda warning, and those statements were used against him in the prison disciplinary proceedings.  Matthews did not have a right to exclude his statements from consideration in that prison disciplinary proceeding.  See Montgomery v. Anderson, 262 F.3d 641, 646 (7th Cir. 2001) (fact that inmate was interviewed without Miranda warnings "is irrelevant to prison discipline" (citing Baxter v. Palmigiano, 425 U.S. 308, 315 (1976)); see also Burkholder v. Newton, 116 F. App'x 358, 362 (3d Cir. 2004) (inmate's statements made in custodial interrogation may be admitted in prison disciplinary proceeding, if statements are not used to increase prisoner's criminal sentence).  As Miranda provides no constitutional protection to Matthews in the prison disciplinary setting, he cannot state a claim for a failure to grant him those protections.  Accordingly, Claim 1 should be dismissed for failure to state a claim.

4

II.   **Handcuffed Escort in Unsecured Area (Claim 2)**

Matthews alleges that C.O. Bilodeau violated his Fifth
Amendment rights to equal protection and substantive due
process, and failed to protect Matthews, by escorting him and
another inmate, Kirk Kirby, through an unsecured area in
handcuffs, in violation of BOP rules, and in a manner different
than that followed by other officers escorting different
inmates.

A.   Equal Protection

An equal protection claim requires "proof that (1) the
person, compared with others similarly situated, was
selectively treated; and (2) that such selective treatment
was based on impermissible considerations such as race,
religion, intent to inhibit or punish the exercise of
constitutional rights, or malicious or bad faith intent to
injure a person."

Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013)
(citation omitted).

Matthews's claim falters in failing to allege facts showing
selective treatment and an improper motive.  Matthews has
alleged that he and Kirby were treated the same.  Matthews has
not pleaded sufficient facts to show that he (and Kirby) were
similarly situated with respect to other inmates who may have
been treated differently by C.O. Bilodeau, or by any different
corrections officers responding to different circumstances

(including, specifically, inmate Mark Judd's escort by C.O.
Donahoe).  Moreover, Matthews has not pleaded sufficient facts
to give rise to a reasonable inference that Bilodeau's conduct
was motivated by any impermissible consideration or an intent to
injure Matthews.  For those reasons, the equal protection claim
relating to the handcuffed escort should be dismissed.

    B.   <u>Substantive Due Process</u>

    To state a claim that executive action violates substantive
due process, a plaintiff must allege facts showing that the
state actor's conduct "objectively 'shocks the conscience.'"  <u>S.
Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.</u>, 775 F.3d
82, 91 (1st Cir. 2014) (citation omitted).  "'[T]he requisite
arbitrariness and caprice must be stunning, evidencing more than
humdrum legal error,'" <u>id.</u> (citation omitted); even bad faith is
not necessarily enough.  <u>Id.</u> at 93.  Taking as true the
allegations that Bilodeau's conduct contravened BOP rules, and
that one purpose of those rules is to protect inmates in
handcuffs from inmate violence, the facts alleged concerning
Bilodeau's conduct in escorting Matthews in handcuffs in an
unsecured area of the prison does not shock the conscience.
Therefore, the substantive due process claim relating to the
handcuffed escort should be dismissed.

C.   Failure to Protect

Under the Eighth Amendment, prison officials have a "constitutional duty 'not to be deliberately indifferent to the risk to prisoners of violence at the hands of other prisoners.'" Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (citation omitted).  To state an Eighth Amendment failure to protect claim, the prisoner must show that a prison official acted with "'deliberate indifference'" to a serious risk to the prisoner's health or safety.  Giroux v. Somerset Cty., 178 F.3d 28, 32 (1st Cir. 1999) (quoting Farmer v. Brennan, 511 U.S. 825, 828 (1994)).

Matthews has not stated facts sufficient to support a claim that Bilodeau was deliberately indifferent to a substantial risk of serious harm to Matthews.  There is no suggestion that Bilodeau was subjectively aware that inmates in the area presented a substantial risk of serious harm to Matthews during the handcuffed escort.  Accordingly, the Eighth Amendment failure to protect claim concerning that escort should be dismissed.

III. **Disciplinary Proceedings**

A.   Procedural Due Process (Claim 3)

Matthews claims that defendants Mullens, Deveney, and Warden Tatum, involved in the February 2015 disciplinary

7

proceedings violated his right to due process. The protections of the Due Process Clause are triggered if there is a deprivation of a protected interest in life, liberty, or property. "For a prisoner, such a deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)), or when the restraint "exceed[s] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," Sandin, 515 U.S. at 484.

Here, the sanctions imposed on Matthews included the loss of his prison job, the loss of commissary and visiting privileges for thirty days, and he alleges, the loss of a top bunk assignment. None of those restraints exceeded the terms of Matthews's prison sentence, or otherwise imposed an atypical or significant hardship upon him in relation to the ordinary incidents of prison life. See, e.g., Corbeil v. Cahill, No. 1:13-CV-1323, 2015 U.S. Dist. LEXIS 6688 at *7-*8, 2015 WL 268574 at *3 (M.D. Pa. Jan. 21, 2015) (citing cases showing that loss of job and loss of commissary and visiting privileges for 100 days do not give rise to liberty interest under Sandin); see also Rodrigues v. Ryan, No. CV 14-8141-PCT-DGC(ESW), 2015 WL

4470095 at *3, 2015 U.S. Dist. LEXIS 94756 at *7 (D. Ariz. July 20, 2015) (bunk reassignment is not atypical or significant hardship).  The district judge should thus dismiss Claim 3.

B.   Substantive Due Process/Equal Protection (Claim 4)

Plaintiff asserts that defendants violated his Fifth Amendment rights to substantive due process and/or equal protection, in that C.O. Bilodeau's charge against him was not true; defendants Deveney and Mullens convened a disciplinary hearing even though a supervising officer had told Matthews that disciplinary proceedings would not ensue; the disciplinary sanctions imposed on Matthews are alleged to have been disproportionately severe; and the Warden did not respond to each of Matthews's arguments in his appeal.  Nothing in those allegations, however, gives rise to an actionable Fifth Amendment claim.

The suggestion that a corrections officer falsely accused an inmate of disobeying orders to lie down before the inmate did so, and/or that the officer misquoted the inmate does not shock the conscience, where the charges at issue were vetted through the disciplinary process before the sanctions at issue were imposed, and the inmate retained the right to pursue an administrative appeal.  Moreover, the fact that disciplinary proceedings ensued when a supervisory officer had said that they

would not does not shock the conscience, as the officer's
statements could not insulate the prisoner from the disciplinary
process, where he is not alleged to have had authority to bind
the prison.  Cf. United States v. Ellis, 527 F.3d 203, 208 (1st
Cir. 2008) ("'estoppel and apparent authority are not available
to bind the federal sovereign'" (citation omitted)).

As to Matthews's claim that the sanctions imposed were
disproportionately severe, Matthews has not alleged facts to
show that inmate Steven Still, or any other inmate whose
sanctions were less severe, was similarly situated to Matthews
in all relevant respects affecting the type and duration of the
sanctions at issue.  Still's charges did not relate to the same
incident as Matthews's and are not alleged to have involved
multiple orders to lie down following an altercation with
another inmate.

Finally, Matthews did not have a right to a particular
result in his administrative appeal or to receive explicit
resolution of each argument he asserted to the Warden, and he
has not shown that the Warden treated him differently than any
other similarly-situated inmate.  Accordingly the facts alleged
by Matthews do not state a claim that any defendant violated
Matthews's Fifth Amendment rights to substantive due process or
equal protection, with respect to the disciplinary proceedings.

Claim 4, above, should be dismissed.

**V.    Retaliation (Claim 5)**

    A.    Standard

To proceed on a claim that prison officials retaliated against a plaintiff for engaging in conduct protected under the First Amendment, the plaintiff must show: (1) that the conduct which led to the retaliation was protected by the First Amendment; (2) that he suffered non-de minimis adverse action at the hands of the prison officials; and (3) that there was a causal link between the exercise of First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011); Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009).  An adverse act is de minimis if it would not deter an individual of ordinary firmness from exercising First Amendment rights.  See Starr, 334 F. App'x at 342.

    B.    Deveney's Threat

Construed liberally, the pleadings allege that Deveney's threat to write Matthews up during the hearing was intended to retaliate against Matthews for objecting to Deveney's ruling regarding witnesses at the hearing, an exercise of Matthews's First Amendment rights.  Matthews's allegations regarding Deveney's threat do not state an actionable retaliation claim. No inmate of ordinary firmness would be dissuaded from challenging rulings made during a disciplinary hearing based on such a threat, knowing that appellate channels remained open to

11

the inmate to challenge those rulings, and that any disciplinary write up relating to his conduct during the hearing would in turn be subjected to a disciplinary hearing with appellate review.  Cf. Starr, 334 F. App'x at 342-43 (disciplinary charge is de minimis where inmate could defend himself from disciplinary report, and disciplinary report, which was later dismissed, resulted in no substantial impact on inmate); Gibbs v. King, 779 F.2d 1040, 1046 (5th Cir. 1986) (disciplinary proceedings resulting in imposition of only "minor sanction" is insufficient to prove retaliation).  Accordingly, Claim 5(a) should be dismissed.

     C.   Sanctions

Matthews has alleged that the sanctions imposed upon him following the February 24, 2015, hearing were disproportionately harsh and were imposed in retaliation for his engaging in protected speech and conduct.  Matthews has alleged facts suggesting that Deveney and Mullens were aware of Matthews's work as a law librarian, and that the staff generally knew about Matthews's own litigation activities.  Matthews has also alleged that there were procedural irregularities in the proceedings.

The procedural irregularities, the nature of the sanctions, and the hearing officers' knowledge, described by Matthews, do not give rise to a reasonable inference of a causal connection

12

between Matthews's First Amendment activities and the sanctions imposed.  The procedural irregularities were not so extreme as to give rise to an inference of a retaliatory motive, per se, where Matthews received advanced notice of the charge, a written statement of the decision, and an opportunity to appeal administratively to decision makers who are not alleged to have been biased.  Evidence filed by Matthews belies any argument that the sanctions that followed from the conviction, including the loss of a prison job and the bunk reassignment, exceeded the scope of sanctions permitted for the offense.  See Doc. No. 4, at 4 (Pl.'s Ex. B).

General staff knowledge about Matthews's First Amendment activities also does not give rise to a reasonable inference of a causal connection in this case, in light of facts showing that the sanctions were within the scope of allowable sanctions, the extent of any particular defendant's knowledge, and the absence of facts regarding the timing of the disciplinary hearing relative to Matthews's First Amendment activities.  Nothing alleged by Matthews suggests that the sanctions were imposed because of any animus towards Matthews's First Amendment activities.  Accordingly, Matthews's First Amendment challenge to those sanctions (Claim 5(b)) should be dismissed.

## VI. **Criminal Law**

Matthews asserts that Bilodeau made false statements in the report that triggered the disciplinary proceedings, in violation of federal criminal law.  The criminal statute cited in the pleadings, 18 U.S.C. § 1001, however, does not provide Matthews with a private right of action.  See Abou-Hussein v. Gates, 657 F. Supp. 2d 77, 81 (D.D.C. 2009), aff'd, No. 09-5358, 2010 WL 2574084, 2010 U.S. App. LEXIS 12047 (D.C. Cir. June 11, 2010) (per curiam).  There is no federal right to have wrongdoers prosecuted.  See Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")).  Accordingly, the district judge should dismiss Claim 6.

## **Conclusion**

For reasons stated above, the district judge should dismiss this matter in its entirety for failure to state a claim upon which relief can be granted.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal

the district court's order.  See Garayalde-Rijos v. Mun. of
Carolina, 747 F.3d 15, 21-22 (1st Cir. 2014).


_____
Andrea K. Johnstone
United States Magistrate Judge


November 30, 2015

cc:  Alexander Otis Matthews, pro se